We have four cases on our calendar this morning. Two patent cases, one from a district court and another from the PTO. We have a veteran's case and we have a government employee case that is being submitted on the briefs and therefore will not be argued. Our first case is evolutionary intelligence versus Sprint, Apple, et al. There are a lot of numbers here. 2016, 1188 through 1199. So we will hear from Mr. Kennedy. Good morning and may it please the court. The inventions of the asserted patents are highly specific, unique improvements to computer technology. The district court over-generalized the inventions and failed to appreciate the improvements that they make to the prior art static information model that's discussed at length in the specification. But where is that in the claim itself? Like claim one of the 682 patent or claim one of the 536 patent. In fact, I could only find the word static information once in the entire specification. So where does the claim itself make it clear that what they are seeking to cover is precisely the narrow advance that you are suggesting was made in this field? Sure, Your Honor. As a first point, I want to make clear that these patents do not claim to be the only way to overcome the static information model. This is just one way of addressing limitations with respect to the static information model. But to address more specifically your question, for example, in the 536 patent claim one, where it discusses the second register. The second register has a representation designating time and governing interactions of the container with other containers. According to the utility of information in the information element, relative to an external-to-the-apparatus event time. And what that means is that the invention is designed to dynamically adjust these register values according to constantly changing external-to-the-apparatus event time. And that's with claim one. Are these done by physical changes in the computer or is it programming? Well, Your Honor, it is programming, but I suppose you could say that... Ultimately, it's just organizing information and rearranging information. Well, Your Honor, I would not characterize it as just reorganizing information. Arranging information. I wouldn't say that it's organizing information in any way differently from what a computer normally does, Your Honor. Any computer application at base is designed to organize information. It's also designed to process information, to change values as the time and the space change. So it's not just about taking information that exists and putting it in different places, like files or boxes or, you know, these analogies that the defendants used. But the law has changed. These patents go back to 1998 when we didn't have the governing law from the Supreme Court. And you say it's no different from other computer processes organizing information, but most of them in the last number of years have been found not to be eligible for patent. Your Honor, I would say that this case is most like some of the recent cases that this court has done. DDR and EnFish. I knew you were going there. That's right, Your Honor, and also BASCOM. But I think EnFish is particularly relevant to this case. We claimed in EnFish, in that opinion, we stated that the claim articulated a precise, exact, concrete way to achieve more efficient memory, and the claim articulated the elements. I mean, one of the differences here is your claiming that these claims represent some improvement over static information in the form of dynamic information. These claims contain nothing meaningful. They never explain how the containers are created or manipulated, how the dynamic interactive registers work, nothing. These claims are aspirational claims, like so many of the others we've held invalid under 101. I'm not saying there isn't a kernel of inventiveness. I'm saying it wasn't properly claimed according to today's standards. EnFish was, whether we were right or not, a case in which we said the claim itself articulated a precise, specific way to achieve greater computer efficiency. This claim, especially, you went to the 536, which I would have too if I were you, right? It's at least got some level of detail. I mean, the 682 is nothing but aspirational claiming. So I don't see how you can draw the analogy to EnFish in light of what our court said about those EnFish claims. I'd like to address the 682 because I think that the limitations of, we'll just start with claim one, are actually quite specific. In the 682 patent, you have a plurality of containers. And in each of those containers, you have container registers that are encapsulated. But that's normal. That's not, I mean, that's not unusual. That's not argued to be novel in any way. The part that I just stated, Your Honor, is not unusual. You are correct. However, as this court was clear in the BASCOM decision, the court considers the ordered combination of the elements. And so if I could just build on what I was describing with claim one, the container registers, there's a plurality of them, have historic data that's associated with the interaction among the containers. And further, when a search is done, the historic data in each of these containers is searched. And that results in some of the containers being identified as being responsive to the search query. But that's not all the claim requires. It requires more. Well, good, because so far you've described nothing that's patent eligible. So keep going. What is the else, the more it describes? Sure, Your Honor. The identified containers are then encapsulated in a new container. And then inside of each of these containers that are encapsulated, there is a second container register. And that register is updated with data associated with interactions of the identified containers, these are the containers inside of the larger container, with the larger container. So in other words, the encapsulated containers are interacting with the container that encapsulates them, and the registers inside the identified containers are updated dynamically in that interaction. And then the last step is that a list of identified containers is provided. But that is a highly specific claim. Each of those elements, of course, has to be satisfied in order for there to be infringement. And with that in mind... Do you have kids? Yes, Your Honor. Okay, so I have a bin at home, and it's a series of shelves. And each shelf has a bin. And this one is dinosaurs, and this bin is Legos, and this one is Lincoln Logs. I mean, I'm making it up as I go along, because my kids are older now, and the bin doesn't exist any longer. But you understand my point. Yes. If I told them to go do a search based on historical data, go find me the T-Rex, how is that any different from what you just articulated was your claim but for the fact that it's on a computer? Because that's what the prosecution history mattered, right? The examiner twice rejected this claim as ineligible under 101 in the ancient days when everything was eligible. Twice he rejected this as ineligible. And then you added using it all on a computer. You narrowed the claim by limiting it to on a computer. Well, the Supreme Court has made clear that that doesn't save claims any longer. Our transformation or tied to a machine went out the window. So I don't know. How is what's claimed here, these registers in a computer which contain particular types of data and are therefore searched, any different from my kids' set of shelves? The difference in that metaphor, Your Honor, is that the T-Rex is not interacting with a container. And the T-Rex does not have a dynamic register that is updated to account for the interactions between the T-Rex and the larger container. So in the context of the 682 patent, and that's where the defendant's analogies fail also. The defendants talked about searching libraries. So, for example, you could imagine searching a library for a certain subject matter and finding responsive books and putting them in a container. And so far it might sound like I'm talking about the Claim 1 of the 682, but it requires more. It would require that these books that have been identified have registers that actually update dynamically as the books interact with the container. And so that's where that... Isn't that what the card at the back does? Keeps a record of who's checked it out. Well, Your Honor, there's no interaction between the book and the container that would result in the card being updated. So no. The point that I wanted to focus on... I'm not sure what interaction with the container means, I guess. The language here is so unbelievably abstract and opaque, it's hard to even think about what it means in intuitive terms. But I guess I took what it meant was if you take the book out and you put it in a cart, that's the container, and then you write down what carts it's been in, which is to say my cart and Judge Moore's cart, and then there's a record in the book of the containers it's been in. Why is that improper? Well, Your Honor, I don't think that addresses the specific requirements of the claim, which is that the identified container actually needs to interact with the new container. What does interact mean? That has encapsulated it. What does it mean for the identified container to interact with the container that has encapsulated it? Well, Your Honor, it could mean exchanging data, for example. Right, so I write my name in the card on the book or the librarian who's checked it out does. I understand that, but Your Honor, that is not the container itself, the container interacting with the book. That's someone taking the book out of the container and writing information in it. It's just completely distinct from the... Why is my little satchel containing the seven books I've checked out that morning not a container, a capsule? I think, well, Your Honor, first of all, even by the defendant's own claim constructions, a container has to deal with digital data. It's a computer term. They said that it needs to be logically defined. But setting that aside and let's assume that, for the sake of argument, that a satchel is a container, that still doesn't meet the limitations of the requirement because the satchel cannot communicate with the book. It cannot interact with the book. There's no exchange of data or processing going on, and there's no dynamic updating of the book in accordance with that. But I think what the Patent Office has done with these patents is instructive because the Patent Office considered 15 different prior art references, all of which process containerized data. That's undisputed. And the Patent Office found, after a lot of analysis, that none of those prior art references anticipate any of the claims of these patents. Mr. Kennedy, you're onto your rebuttal time. Would you like to save it or continue? I'll continue for a moment, Your Honor. Thank you. What that shows us is that there are at least 15 different ways of processing containerized data that do not run afoul of the patents. And to my knowledge, Your Honors, this is the only case in which this argument has been made, that when there are so many different examples of prior art that practice in the field of invention without running afoul of it, there can be no preemption. We will save the remainder of your time, Mr. Kennedy and Ms. Keith. Thank you, Your Honors, very much. Good morning. As Your Honors were noting, the problem here was not one of improving a computer, but rather one of data organization, updating, and retrieval. Can you explain that distinction? The distinction between whether or not it's simply organizing information or improving the functioning of a computer? So the way I understand it, Your Honor, in the EnFISH case as well as in McRow and DDR, these were problems that existed only because of the computer space. These were problems that arose within a computer. For DDR, for example, the problem was keeping someone on a website and preserving a look and feel of a website. Talk about EnFISH. DDR is easier. For EnFISH, the argument in EnFISH was that because it was a means plus function claim, they actually brought the algorithm from the specification into the claim itself. And that algorithm for setting up these data structures included the mandate of it being a self-referential data table. So the table would work faster and use less memory because it was self-referencing itself within the computer itself. I think I understand what was happening in EnFISH. What I'm trying to understand is, or looking for, is language that captures an intuition that is a pretty strong intuition that something is different in EnFISH about the internal organization of a generally available computer capability and the claim is about that as opposed to a use of current computer capabilities, which also involves programming. And I'm looking for language that helps identify that intuitive distinction. So for this case, I think that the language that can help is the notion of exactly how broad the claims are in both patents because both patents talk specifically about containers and registers. And it sounds like it might be specific and it might have some form of structure. But if you look at the specification, the specification calls a container anything from n bits to all of cyberspace. And that's actually within the patent specification at, let me get you a citation, starting at the bottom. 536? In the 536 patent, the beginning, at the bottom of column 8, when they start describing what a container is, up through the top and inclusion of column 9, and I'm looking specifically at lines 5 through 100, a container at a minimum encapsulates a single digital bit. I'm sorry, 5 through what? 5 through approximately 9. And so it talks about a container being anything from a single bit to all of cyberspace and to all containers that could ever be defined in cyberspace, including cyberspace that hasn't been created. And then further in column 12 at line 45, it says that containers can include n other containers to infinity. The registers themselves are also deemed to be nothing more than values, something like a name or a rule, and that's at column 9, lines 14 through 17. And so what we have here, which I think can help, Your Honor, is the notion that a container can be anything and include anything, even other containers, and the registers can be anything, any value, so long as it in some way identifies what's happening. Then the only specificity we have for the registers are that they be potentially based on time or on location, and then we're directly into the IV-1 case in which this court held that location-based organization of information or using location in order to deliver more information was, in fact, an abstract idea. And so I hope that helps, Your Honor, and I think those are pieces of language that you can use from the claims to distinguish it from ENFISH, which was something very specific, a self-referential table because of a means-plus-function claim versus the overwhelming breadth of the claims and containers that can be anything with registers that can be anything other than possibly time and space, which IV-1 has told us is absolutely abstract. And so this case is much more like IV or Digitech and Accenture, and the reason I bring up Digitech is because Digitech was a case in which pieces of information were extracted from other information and combined together to form a new profile, and it appears as though that's what the patent owner is saying is happening here, but we're adding in information to something else. But in Digitech, the court found that that combination of new material into another form that could be used later was also abstract. And finally... I have a question. Please. If this claim were interpreted as being a specific, concrete improvement to, or I should say change in how computers record and retrieve data, because that's kind of like what ENFISH was. With the self-referential table, the spec talked at length about how it's going to work faster, it's going to be more efficient, that sort of thing. If creating these buckets of memory within a computer would allow for a much more efficient search process, for example, to take place every time across all computers, because this really went to the heart of computer memory. And if that were the nature of the claims, wouldn't that be like ENFISH? I don't believe so, Your Honor, and the reason I say that is because this is simply improving a search, not improving a computer, and there's a very big difference between that. To Your Honor's example of trying to find a toy in a bucket, if, for example, the dinosaur got a red sticker on it every time your son used it to show that it was his favorite animal, and the red sticker therefore made it more obvious and easier to find, that's exactly what is happening here. You're just making the search a little bit faster, a little bit easier, by putting things in a location that might be more convenient. You're not improving the computer at all. You're just using a computer in order to do what other people have done. Wait, you say you're not improving the computer. ENFISH was a software case that improved the functioning of the computer. See, improving the computer, you make it seem like it is a static object capable of being improved absent a user's interaction with it, which clearly it is not. The computer didn't look better with the ENFISH software in it than it did without it. It wasn't some sort of a static thing or otherwise. It was the computer functioned more efficiently. What does that mean? That means when a user interacted with it, it did something faster, better, with less memory, whatever. How is that different from something that would dramatically improve search capability, for example, whether it be on the Internet or through the computer memory or something like that? I don't understand the distinction you're drawing between searching and what was at issue in ENFISH. For example, Your Honor, what was at issue in ENFISH was whether or not, because of how the data structure within the computer itself would speed up its ability to... Actually, it wasn't even speed up. I think that the thing that it really did was it allowed for less use of memory. The opinion talked specifically about the specification going over and over about using less memory. In the search context, this is something that happens outside of computers, and simply being able to put things in buckets is not going to reduce the memory that's being used or the memory that's going there. I look, for example... It's not going to reduce the memory, but it could dramatically improve the speed with which the computer operates to execute the command that you're searching for. But then that would be no different from the IV case, from Accenture, from Digitech, from Ultramershal, from all of these other cases where it might have been easier to get to the information, and therefore it could have been faster to figure out which program to show somebody based on their location, based on their time, by virtue of the fact that you're using a computer. I don't think that the computer is being sped up here at all. In fact, all we're doing is we're giving a better search result. It's not a faster search result, except for the fact that it's on a computer. It's better because it's the idea that I'm giving you the one that has historic information associated with it. There's nothing anywhere in the claims or in the patent that talks about this being faster or in some way making the computer better. Instead, it just says I'm going to try to get you the best piece of information based on time, rules, location. Put that way, it seems to me one could as easily say, this is actually faster and less use of computer resources to get to where the user wants to get. If you first give a kind of undifferentiated dump of largely irrelevant information, then you're going to get a follow-up query, and you're going to do it again and again. If the computer says, I know you, I know what time of day it is, I know you're in downtown Washington. You've used less of the computer resources to get to the end of the necessary transaction. But then that, Your Honor, is no different from the TLI case, in which you got a large dump of information about a photo, which included the photo itself as well as information about the photo. And then you extracted the metadata about the photo and stored it so that in the future, when you wanted to find that photo again, you could just ask for pictures about the birthday party. Instead of having to wade through all of the pictures. And the court found that to be abstract as well, because it was simply reorganizing data so that someone could go and grab it. That is a fundamental human behavior that existed prior to the computer. And the fact that you're using a computer, which can eventually speed it up, is only in its general purpose way. It's not improving the computer at all. It's simply using the computer for its general purpose on general purpose components. And here, the patent owner has admitted that all of the components that are being used are general purpose components, including containers, registers, gateways, and values. And so the computer's not being improved upon at all. All this is is potentially a better way of organizing the information so that someone can maybe access it more simply, not so that the computer is working better. And that is exactly what all of the cases, content extraction, Digitech, Accenture, IV, et cetera, talk about in terms of if all you're doing is reorganizing data so that it can be pulled up more quickly or pulled up in a different fashion, that is not something that is eligible for patentability. Instead, those are abstract ideas of using human behavior to reorganize data so that we can access it a little bit more simply. And that's why Judge White down below used the example of a librarian or even, for example, a barista who sees you walk into a coffee shop and realizes that you have a latte normally, but when it's Christmas time, you get a pumpkin spice latte. And that's just an update of the registers and update of the information. And that's age-old human interaction that should not be patentable. And I don't think there's anything in the claims that takes it out of that realm. And unless Your Honors have any other questions. Thank you, Ms. Keefe. Thank you very much, Your Honors. Mr. Kennedy has a couple of minutes. We'll give you two minutes. Thank you. To the extent that this patent is about reorganizing data, one would say exactly the same thing about the patent in NFISH. That patent involved the self-referential database tables, and all it did essentially was take various different tables that were in the relational model where you had separate tables, and you combined them into a single table. It's essentially reorganizing information. But this court held that that was eligible and noted that it was eligible because it resulted in faster searching and, as counsel said, smaller memory requirements, and finally increased flexibility in configuration. So if there's any argument that these patents are ineligible because they reorganize information, the same argument would have been true in NFISH. The main point that I think has been not addressed so far is the patent's discussion of the problem that it was trying to solve, which is a static information model. The patents describe at length seven different drawbacks with the static information model, and it's clear by the specification that that is what the patents are trying to address. The district court did not properly evaluate that. We offered an expert opinion that carefully evaluated the static information model, described how the patents are designed to overcome that, and stated that the patents are designed to address a problem that is squarely within the domain of computers. And, of course, the district court, while considering facts outside the record and, indeed, inventing facts of its own, declined to review our experts' report. Thank you, Mr. Kennedy. We will take the case under advisement.